## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

BOARD OF COUNTY COMMISSIONERS OF
COAL COUNTY,

     Plaintiff,

vs.

(1)   PURDUE PHARMA, L.P.,
(2)   PURDUE PHARMA INC.,
(3)   THE PURDUE FREDERICK COMPANY,
(4)   CEPHALON, INC.,
(5)   TEVA PHARMACEUTICAL INDUSTRIES, LTD.,
(6)   TEVA PHARMACEUTICALS USA, INC.,
(7)   JANSSEN PHARMACEUTICALS, INC.,
(8)   JOHNSON & JOHNSON,
(9)   ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.,
(10) JANSSEN PHARMACEUTICA, INC.,
(11) ENDO HEALTH SOLUTIONS INC.,
(12) ENDO PHARMACEUTICALS INC.,
(13) ALLERGAN PLC,
(14) ACTAVIS PLC,
(15) WATSON PHARMACEUTICALS, INC.,
(16) WATSON LABORATORIES, INC.,
(17) ACTAVIS PHARMA, INC.,
(18) WATSON PHARMA, INC.,
(19) ACTAVIS LLC,
(20) MALLINCKRODT PLC,
(21) MALLINCKRODT LLC,
(22) MCKESSON CORP.,
(23) CARDINAL HEALTH, INC.,
(24) AMERISOURCEBERGEN DRUG CORP.,
(25) ANDA PHARMACEUTICALS, INC.,
(26) ANDA, INC.,
(27) GCP PHARMA, LLC,
(28) KEYSOURCE MEDICAL, INC,
(29) MORRIS & DICKSON CO, LLC,
(30) QUEST PHARMACEUTICALS, INC,
(31) THE HARVARD DRUG GROUP, LLC,
(32) PHYSICIANS TOTAL CARE, INC.,
(33) CVS HEALTH CORPORATION.,

Case No.   19-cv-405-RAW

(Removal from: District Court of Coal County, Case No. CJ-19-11)

(34) CVS PHARMACY, INC.,                          )
(35) OKLAHOMA CVS PHARMACY, LLC.,                 )
(36) WALGREENS BOOTS ALLIANCE, INC.              )
     a/k/a WALGREEN CO.,                          )
(37) SAJ DISTRIBUTORS,                            )
(38) H.D. SMITH WHOLESALE DRUG. CO.,             )
                                                  )
     Defendants.                                  )

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant McKesson Corporation ("McKesson"), by counsel, hereby gives timely notice of the removal of this matter from the District Court of Coal County, Oklahoma to this Court.  As grounds for removal, McKesson states as follows:

## I.   NATURE OF REMOVED ACTION

1.      On June 25, 2019, the Board of County Commissioners of Coal County ("Plaintiff") filed this action in the District Court of Coal County, State of Oklahoma, titled *Board of County Commissioners of Coal County v. Purdue Pharma L.P., et al*. The court designated the case No. CJ-2019-11.

2.      The Petition names three groups of defendants.

3.      The first group of defendants consists of Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company Inc.; Cephalon, Inc.; Teva Pharmaceutical Industries Ltd. (incorrectly named as Teva Pharmaceutical Industries, Ltd.); Teva Pharmaceuticals USA, Inc.; Janssen Pharmaceuticals, Inc.; Johnson & Johnson; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. (incorrectly named as Watson

Pharmaceutical, Inc.); Watson Laboratories, Inc.; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Actavis LLC; Mallinckrodt plc; and Mallinckrodt LLC (collectively, "Manufacturer Defendants").

4.      The second group of defendants consists of McKesson; Cardinal Health, Inc.; AmerisourceBergen Drug Corporation; Anda Pharmaceuticals, Inc.; Anda, Inc.; GCP Pharma, LLC; Keysource Medical, Inc.; Morris & Dickson Co., LLC; Quest Pharmaceuticals, Inc.; The Harvard Drug Group, LLC; Physicians Total Care, Inc.; SAJ Distributors and H.D. Smith Wholesale Drug Co. (collectively, "Distributor Defendants").

5.      The third group of defendants consists of CVS Health Corporation; CVS Pharmacy, Inc.; Oklahoma CVS Pharmacy, L.L.C.; and Walgreens Boots Alliance, Inc., (collectively, "Pharmacy Defendants").

6.      Plaintiff complains of over-distribution of prescription opioids into Coal County, alleging that McKesson and the other Distributor Defendants "flood[ed] the market in and around Plaintiff's community with highly addictive opioids," Pet. ¶ 186, and that Distributor Defendants "knew or should have known that the opioids being diverted from their supply chains would contribute to the opioid epidemic faced by Coal County . . . ." *Id*. ¶ 188.

7.      The Petition asserts five counts against the Distributor Defendants: public nuisance under 50 O.S. § 2 (Count I); actual and constructive fraud (Count II); negligence and negligent misrepresentation (Count III); civil conspiracy (Count IV); and unjust enrichment (Count V). *See* Pet. ¶¶ 203-235. The Petition seeks punitive and actual damages. *Id.* ¶¶ 236, 251-252.

8.      Although Plaintiff purports to disavow stating a federal question, Pet. ¶ 59, Plaintiff pleads, among other things, that Distributor Defendants "[are] required to implement and follow processes that stop suspicious or unusual orders by pharmacies, doctors, clinics, or patients," *id.* ¶ 8, that Distributor Defendants "must create and use a system to identify and report downstream

suspicious orders of controlled substances to law enforcement," *id.* ¶ 165, and that "Distributor Defendant[s] repeatedly and purposefully breached [these] duties," *id.* ¶ 169.

9.      Because the duties governing reporting and shipping "suspicious" opioid orders arise from the federal Controlled Substances Act ("CSA") and its implementing regulations, Plaintiff pleads that alleged violations of federal law form the basis for its claims.

10.      On November 15, 2019, McKesson, AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and the Harvard Drug Group, LLC moved for an enlargement of time to respond to the Petition through January 20, 2020. The motion was granted by the District Court of Coal County on November 21, 2019.

11.      McKesson has not responded to the Petition in state or federal court.

12.      On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Aaron Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2015). McKesson intends to tag this case immediately for transfer to the MDL.

13.      In accordance with LCvR 81.2, a copy of the state court docket sheet is attached as **Exhibit 1**. In accordance with 28 U.S.C. § 1446(a), copies of all documents filed or served upon McKesson in the state court action are attached as **Exhibits 2-51.**

## II.      TIMELINESS OF REMOVAL

14.      McKesson was served with the Petition on October 31, 2019.

15.      In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of service of Plaintiff's Petition. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

16.     "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C).

## III.    PROPRIETY OF VENUE

17.     Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is in this district.

## IV.    BASIS OF REMOVAL

18.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*

19.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

20.     "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

21.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[1]

---

[1] A defendant need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-

22.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

23.     As set forth below, this case meets all four requirements.[2]

24.     Although Plaintiff ostensibly pleads some of its theories of recovery against McKesson as state law claims, it bases the underlying theory of liability on McKesson's alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were

---

98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331." 565 U.S. 368, 379 (2012) (brackets, citations, and internal quotation marks omitted).

[2] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

shipped in fulfillment of suspicious orders that McKesson allegedly had a duty to identify, report, and then not ship.

25.     The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations. The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice. Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007), as source of DEA's "Shipping Requirement").

26.     Plaintiff's theories of liability against McKesson and other Distributor Defendants, as pleaded in the Petition, are predicated on allegations that McKesson and Distributor Defendants breached alleged duties under the CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiff's claims—to refuse to ship such orders to Oklahoma pharmacies.

27.     Specifically, Plaintiff invokes federal law and pleads that McKesson and the other Distributor Defendants violated federal law with, among others, the following allegations:

a.     "The prescription drug industry is required by law to secure and monitor opioids at every step in the stream of commerce, thereby protecting opioids from theft, misuse, and diversion. The industry is required to implement and follow processes that stop suspicious or unusual orders by pharmacies, doctors, clinics, or patients." Pet. ¶ 8.

b.  "The DEA has provided guidance to distributors to combat opioid diversion. On information and belief, since 2006 the DEA has conducted one-on-one briefings with distributors regarding downstream customer sales, due diligence, and regulatory responsibilities . . . . On September 27, 2006, and December 27, 2007, the DEA Office of Diversion Control sent letters to all registered distributors providing guidance on suspicious order monitoring and the responsibilities and obligations of registrants to prevent diversion." Pet. ¶¶ 173-74.

c.  "As part of the legal obligation to maintain effective controls against diversion, the distributor is required to exercise due care in confirming the legitimacy of each and every order prior to filling . . . . Suspicious orders must be reported when discovered. Registrants must perform an independent analysis of a suspicious order prior to the sale to determine if the controlled substances would likely be diverted. Filling a suspicious order and then completing the sale does not absolve the registrant from legal responsibility." Pet. ¶¶ 175-76.

28.  In its Petition, Plaintiff fails to specifically identify a state law source for a requirement that wholesale pharmaceutical distributors owe a duty to "stop suspicious or unusual orders[,]" Pet. ¶ 8, or "terminate orders" of controlled substances from registered pharmacies. *Id.* ¶ 165. While Plaintiff cites generally to the Oklahoma Uniform Controlled Dangerous Substances Act, 63 O.S. §§ 2-101 *et seq.*, and the Oklahoma Administrative Code, it fails to identify *any* specific provision of these state laws that would require distributors to halt suspicious or unusual orders of prescription opioids. Thus, Plaintiff's claims against Distributor Defendants, as Plaintiff pleads them, raise federal issues.

29.     Plaintiff's theory of liability also relies on an expansive reading of federal law that calls into question an agency determination. Plaintiff alleges not only that Distributor Defendants should have detected and reported discrete suspicious orders by their respective individual pharmacy customers, but that Distributor Defendants should have recognized that the total volume of prescription opioids distributed by all wholesalers to various regions was suspicious or unreasonable. *See, e.g.*, Pet. ¶ 182 ("Each Distributor Defendant knew or should have known… that the amount of opioids flowing to Coal County was far in excess of what could be consumed for medically necessary purposes."); *id.* ¶ 189 ("[Distributor Defendants] nevertheless persisted in a pattern of distributing commonly abused and diverted opioids in geographic areas in such quantities, and with such frequency that they knew or should have known these commonly abused controlled substances were not being prescribed and consumed for legitimate medical purposes.").

30.     To succeed on that theory, Plaintiff would thus have to show that the total quantity of prescription opioids that all pharmaceutical distributors distributed was excessive or unreasonable. However, the total amount of prescription opioids distributed in any given year turns on annual aggregate production quotas established by DEA. Specifically, DEA must "determine the total quantity of each basic class of controlled substance listed in Schedule I or II necessary to be manufactured during the following calendar year to provide for the estimated medical, scientific, research and industrial needs of the United States, for lawful export requirements, and for the establishment and maintenance of reserve stocks." 21 C.F.R. § 1303.11(a). In making this determination, DEA must consider "[p]rojected demand" for such substances. 21 C.F.R. § 1303.11(b). Thus, to show that the total quantity of prescription opioids that Distributor Defendants

distributed was unreasonable, Plaintiff would have to show that the annual aggregate production quotas set by DEA, pursuant to a federal statute, were themselves unreasonable.[3]

31.     The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

32.     *First*, Plaintiff's state law claims "necessarily raise" a federal question because "the right to relief depends upon the construction or application of federal law." *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (internal quotations and citation omitted); *see also North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

33.     As pleaded, Plaintiff's claims against McKesson and the other Distributor Defendants require Plaintiff to establish that Distributor Defendants breached duties under federal law by failing to stop shipments of otherwise lawful orders of controlled substances into Oklahoma.

---

[3] Moreover, 21 U.S.C. § 827(d)(1) requires Distributor Defendants to report to DEA "every sale, delivery or other disposal" by them of prescription opioids. In other words, it has been the case for years that each Distributor Defendant has reported to DEA the total volume of prescription opioids it distributed. To succeed on its theory of liability that Distributor Defendants should have recognized and reported that the total volume of prescription opioids was unreasonable, Plaintiff would have to show that Distributor Defendants' existing reporting to DEA was inadequate.

34.     For example, in pleading public nuisance (Count I), Plaintiff alleges that Distributor Defendants "have intentionally, recklessly, or negligently engaged in conduct or omissions which endanger or injury the property, health, safety and/or comfort of a considerable number of persons in Coal County by their production, promotion, and marketing of opioids for use by residents of Coal County." Pet. ¶ 204. However, the only allegedly reckless or negligent conduct that Plaintiff elsewhere attributes to Distributor Defendants is their alleged failure to report and halt shipments of suspicious orders. Likewise, in pleading negligence (Count III), Plaintiff alleges that Distributor Defendants "had a legal duty to act with the exercise of ordinary care or skill to prevent injury to another" and that they "breached this duty through their deceptive marketing campaign, distributions of opioids, and failure to divert opioids from illicit channels." *Id.* ¶¶ 223-224. And as noted, the alleged duty to halt or "terminate" shipments of suspicious orders arises under the federal CSA. *See Benjamin v. S.C. Elec. & Gas Co.*, No. 3:16-CV-01141-JMC, 2016 WL 3180100, at *5 (D.S.C. June 8, 2016) ("While Plaintiffs' allegations of negligence appear on their face to not reference federal law, federal issues are cognizable as the source for the duty of care resulting from [the defendant's conduct]."). Thus, though plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff here alleges violations of federal law as the basis for its state-law claims.[4]

---

[4] Furthermore, it is not necessary for federal jurisdiction that McKesson establish that all of Plaintiff's counts against it raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiff's remaining counts against McKesson and the other Distributor Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

35.     In sum, the Petition necessarily raises a federal issue—namely, whether Distributor Defendants violated the CSA by failing to prevent or halt suspicious orders for prescription opioids.

36.     *Second*, this federal issue is "actually disputed" because the parties disagree as to the scope of alleged duties arising under the CSA and whether Distributor Defendants violated their duties that, as Plaintiff pleads them, arise only under the CSA. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

37.     *Third*, the federal issue presented by Plaintiff's claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (internal quotation and citation omitted). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

38.     Plaintiff's theories of Distributor Defendants' liability necessarily require that a court determine the existence and scope of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation. Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st Cong., 2nd Sess. 1970, *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

39.     Plaintiff's theories of Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014). The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" a federal statute "over which the District Court properly exercised removal jurisdiction").

40.     Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In 2005, the Supreme Court held in *Grable* that the lack of a federal cause of action does *not* foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also e.g.*, *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 897 (10th Cir. 2017) ("[Plaintiff's] attempts to privately enforce the CSA in this manner raise, at minimum, substantial question[s] of federal law on the merits . . ."); *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1236–37 (10th Cir. 2006) (noting that the existence of a federal cause of action

"is not dispositive[,]" and finding state law claims based on a dispute over the scope of rights under federal land-grant statute to satisfy *Grable* despite the lack of a private right of action); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

41.     Removal is particularly appropriate here because Plaintiff's action is but one of more than 2,000 similar actions pending in the MDL in the Northern District of Ohio. Indeed, Plaintiff pleads that both the "opioid epidemic" and the alleged improper distribution of prescription opioids by McKesson and other Distributor Defendants are "national" problems. *See, e.g.*, Pet. ¶¶ 65-67 (characterizing the "addiction to opioids" as "a serious *national* crisis" that stems from Defendants' alleged wrongful conduct) (emphasis added) (quotation marks omitted). The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[5]

42.     *Fourth*, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors and litigating this case in state court runs the risk of the state court interpreting or applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA—interprets and applies them. Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

---

[5] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

43.     In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (citation omitted)); *Nicodemus v. Union Pac. Corp.,* 440 F.3d 1227, 1237 (10th Cir. 2006) (state law claims based on dispute over scope of rights under federal land grant statutes raise a "dispositive and contested federal issue" that satisfies *Grable*); *PNC Bank, N.A.* 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315-18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction").

44.     To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Manufacturer Defendants, Distributor Defendants and Pharmacy Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

## V.     OTHER REMOVAL ISSUES

45.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served consent to removal.

46.     The following Defendants have been served, or accepted service, in this action and consent to removal, as indicated by their counsel's signatures below: Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company Inc.;[6] Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Mallinckrodt LLC; Cardinal Health, Inc.; AmerisourceBergen Drug Corp.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Cephalon, Inc.; Teva Pharmaceuticals USA, Inc.; Anda, Inc.; Anda Pharmaceuticals, Inc.; Morris & Dickson Co, LLC; The Harvard Drug Group, LLC; Quest Pharmaceuticals, Inc.; CVS Health Corporation; CVS Pharmacy, Inc.; Oklahoma CVS Pharmacy, L.L.C.; Walgreens Boots Alliance, Inc.; and H.D. Smith Wholesale Drug Co. The Defendants listed in this paragraph expressly reserve, and do not waive, all available defenses, including lack of personal jurisdiction.

---

[6] On September 15, 2019, Purdue and its affiliated debtors filed voluntary bankruptcy petitions for relief under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York. The case is docketed as *In re Purdue Pharma L.P.*, No. 19-23649, and is pending before U.S. Bankruptcy Judge Robert D. Drain. Pursuant to 11 U.S.C. § 362, this filing of the bankruptcy petition operates as a stay as to Defendants Purdue Pharma L.P. and Purdue Pharma Inc. (the "Purdue Debtors"). Moreover, on October 11, 2019, Judge Drain issued an Order pursuant to 11 U.S.C. § 105(a), which was amended on October 18, 2019, enjoining the commencement or continuation of litigation against the Purdue Debtors and certain related parties (including The Purdue Frederick Company Inc.) through November 6, 2019. On November 6, 2019, Judge Drain extended the injunction to April 8, 2020. *See* Not. of Suggestion of Bankr. & Auto. Stay of Proceedings at 1 (Sept. 16, 2019); Order Pursuant to 11 U.S.C. § 105(a) Granting, In Part, Motion for Preliminary Injunction, *In re Purdue Pharma L.P., et al.*, No. 19-08289-rdd, Dkt. 82 (Bankr. S.D.N.Y. Oct. 11, 2019), *amended,* Dkt. 89 (Bankr. S.D.N.Y. Oct. 18, 2019); Second Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, *In re Purdue Pharma L.P., et al.*, No. 19-08289-rdd, Dkt. 105 (Bankr. S.D.N.Y. Nov. 6, 2019). To the extent consent of the Purdue Debtors and The Purdue Frederick Company Inc. is required, they consent to removal. By consenting to removal, none of the defendants waive any right or defense and expressly reserve them, including in connection with the Bankruptcy Court's stay as well as all rights and defenses in this action, including lack of personal jurisdiction.

47.     For the following Defendants, service was not attempted, was not effected, or was otherwise improper, and thus their consent to removal is not required:  Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Keysource Medical, Inc.; GCP Pharma, LLC.; Mallinckrodt plc;  Teva Pharmaceutical Industries Ltd.[7] Nevertheless, they consent to removal. These Defendants expressly reserve all rights and defenses, including those related to personal jurisdiction and service of process.

48.     SAJ Distributors is the business name associated with a line of health and beauty products, none of which contain prescription pharmaceuticals, that was sold by Stephen L. LaFrance Pharmacy, Inc. to L&R Distributors, Inc. in 2012. SAJ Distributors is not a registered corporation, has never operated as a corporation, and has no assets. As a nonfunctioning entity with no assets, SAJ Distributors is a nominal and fraudulently joined defendant whose consent to removal is not required. *See Maryland v. Exxon Mobil Corp.*, 352 F. Supp. 3d 435, 470 (D. Md. 2018), *as amended* (Nov. 21, 2018). To the extent that the consent of L&R Distributors is required, L&R Distributors consents to removal. To be clear, L&R Distributors was not named as a defendant in this action, and does not concede that it is a proper party to this action. Furthermore, L&R Distributors expressly reserves, and does not waive, all rights and defenses, including those related to personal jurisdiction and service of process.

49.     Physicians Total Care, Inc. is a suspended Oklahoma corporation which filed bankruptcy in 2012 and had all its assets sold in 2015.  As a suspended corporation, service on the Oklahoma Secretary of State is not valid service. *Johnson v. McDaniel*, 1977 OK 167, 569 P.2d 977, 981 n. 4 ("Although service was had through the Secretary of State on Target Drilling Company, the

---

[7] Teva Pharmaceutical Industries Ltd. ("Teva Ltd."), Allergan plc f/k/a Actavis plc, and Mallinckrodt plc are foreign companies and are not subject to personal jurisdiction in the United States.  Teva Ltd., Allergan plc f/k/a Actavis plc, and Mallinckrodt plc expressly reserve all defenses, including those related to personal jurisdiction and service of process.

allegation this constituted notice to McDaniel is without support. Target was defunct, no longer in operation and such service may not be considered as effective as to McDaniel."). Thus its consent to removal is not required. Furthermore, because Physicians Total Care is a defunct business entity, it is also a nominal and fraudulently joined defendant whose consent to removal is not required. *See Exxon Mobil Corp.*, 352 F. Supp. 3d at 470 (collecting cases in which courts "have found that a defunct corporation is a nominal party for purposes of removal consent").

50.     By filing this Notice of Removal, neither McKesson nor any other Defendant waives any defense that may be available to them, and Defendants expressly reserve all such defenses, including those related to personal jurisdiction and service of process.

51.     If any question arises as to propriety of removal to this Court, McKesson requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

52.     Pursuant to 28 U.S.C. § 1446(d), McKesson will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

53.     McKesson reserves the right to amend or supplement this Notice.

**WHEREFORE**, McKesson removes this action from the District Court of Coal County, State of Oklahoma, Case No. CJ-2019-11, to this Court.

November 26, 2019                          */s/Stuart D. Campbell*
                                          Stuart D. Campbell, OBA #11246
                                          Kaylee Davis-Maddy, OBA #31534
                                          DOERNER, SAUNDERS, DANIEL
                                          & ANDERSON, L.L.P.
                                          700 Williams Center Tower II
                                          Two West Second Street
                                          Tulsa, Oklahoma 74103-3522
                                          Telephone 918-582-1211
                                          Facsimile 918-591-5360

scampbell@dsda.com
spotts@dsda.com

*Counsel for McKesson Corporation*

**CONSENT OF OTHER DEFENDANTS:**

/s/   Robert G. McCampbell
Robert G. McCampbell, OBA No, 10390
Nicholas V. Merkley, OBA No. 20284
GABLEGOTWALS
One Leadership Square, 15th Floor
211 North Robinson
Oklahoma City, OK 73102-7255
T: 405.235.5567
RMcCampbell@Gablelaw.com
nmerkley@gablelaw.com

Harvey Bartle, IV*
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, New Jersey 08540-6241
T: (609) 919-6685
F: (609) 919-6701
harvey.bartle@morganlewis.com

Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
T: 215.963.5000
F: 215.963.5001
steven.reed@morganlewis.com

Brian M. Ercole*
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
T: 305.415.3000
F: 305.415.3001
brian.ercole@morganlewis.com

*denotes national counsel who will seek pro hac vice admission*

*Counsel for Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.; Actavis LLC; and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.*

*/s/   John H. Sparks*
John H. Sparks, OBA No. 15661
Michael W. Ridgeway, OBA No. 15657
ODOM, SPARKS & JONES PLLC
HiPoint Office Building
2500 McGee Drive Ste. 140
Norman, OK 73072
Telephone: (405) 701-1863
Facsimile: (405) 310-5394
Email: sparksj@odomsparks.com
Email: ridgewaym@odomsparks.com

Charles C. Lifland*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
clifland@omm.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

/s/   Ray E. Zschiesche
Ray E. Zschiesche
PHILLIPS MURRAH
101 N. Robinson Ave.
Oklahoma City, OK 73102
(405) 235-4100
rezschiesche@phillipsmurrah.com

John Lombardo*
ARNOLD & PORTER KAYE SCHOLER
LLP
777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017
(213) 243-4000
John.Lombardo@arnoldporter.com

*denotes national counsel who will seek pro
hac vice admission*

*Counsel for Endo Pharmaceuticals Inc. and
Endo Health Solutions Inc.*

/s/   Jon Epstein
Jon Epstein, OBA #13274
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK  73102-8865
Telephone: (405) 553-2828
Facsimile: (405) 553-2855
Email: jepstein@hallestill.com

Richard Gallagher*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006
Telephone: (415) 315-6300
Fax: (415) 315-6350
Richard.Gallagher@ropesgray.com

Jennifer Pantina*
ROPES & GRAY LLP

Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7320
Jennifer.Pantina@ropesgray.com

*denotes national counsel who will seek pro hac vice admission*

*Counsel for Mallinckrodt LLC*


/s/   Ryan A. Ray
Ryan A. Ray, OBA #22281
NORMAN WOHLGEMUTH CHANDLER
JETER BARNETT & RAY, P.C.
2900 Mid-Continent Tower
401 South Boston Avenue
Tulsa, Oklahoma 74103
rar@nwcjlaw.com

*Counsel for Cardinal Health, Inc. and The Harvard Drug Group, LLC*


/s/   Susan E. Huntsman
D. Michael McBride III, OBA #15431
Susan E. Huntsman, OBA #18401
CROWE & DUNLEVY
A Professional Corporation
500 Kennedy Building
321 S. Boston Ave.
Tulsa, OK 74103-3313
Telephone:  (918) 592-9800
mike.mcbride@crowedunlevy.com
susan.huntsman@crowedunlevy.com

*Counsel for AmerisourceBergen Drug Corporation and H. D. Smith, LLC f/k/a H. D. Smith Wholesale Drug Company*


/s/   Jeffrey A. Curran
Jeffrey A. Curran, OBA No. 12255
Ashley E. Quinn, OBA No. 33251
GABLEGOTWALS
One Leadership Square, 15th Floor
211 North Robinson

23

Oklahoma City, OK  73102
Tel: 405.568.3314
Fax: 405.235.2875
JCurran@gablelaw.com
aquinn@gablelaw.com

James W. Matthews (*pro hac vice motion forthcoming*)
Ana Francisco (*pro hac vice motion forthcoming*)
Katy E. Koski (*pro hac vice motion forthcoming*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel: 617.342.4000
Fax: 617.342.4001
Email:
jmatthews@foley.com
afrancisco@foley.com
kkoski@foley.com

*Counsel for Anda Pharmaceuticals, Inc. and Anda, Inc.*


/s/   Clifford F. Kinney, Jr.
Clifford F. Kinney, Jr.*
SPILMAN, THOMAS & BATTLE, PLLC
300 Kanawha Blvd, E
Charleston, WV 25301
Telephone: 304-340-3800
ckinney@spilmanlaw.com

*denotes national counsel who will seek pro hac vice admission*

*Counsel for Keysource Medical, Inc.*


/s/   Frank H. Spruiell, Jr.
Frank H. Spruiell, Jr.*
Russell R. Dickson*
WIENER, WEISS & MADISON, APC
Ste. 1000
330 Marshall Street
Shreveport, LA 71101
318-226-9100

Fax: 318-424-5128
fspruiell@wwmlaw.com
rdickson@wwmlaw.com

*denotes national counsel who will seek pro
hac vice admission*

Counsel for Morris & Dickson Co., LLC


/s/   D. Todd Riddles
D. Todd Riddles, OBA No. 15143
CHEEK LAW FIRM, PLLC
311 N. Harvey Ave.
Oklahoma City, OK  73102
Tel. 405-272-0621
triddles@cheeklaw.com

John J. Haggerty*
FOX ROTHSCHILD LLP
2700 Kelly Road, Suite 300
Warrington, PA 18976
Tel. 215-918-3564
jhaggerty@foxrothschild.com

* denotes national counsel who will seek pro
hac vice admission*

Counsel for Quest Pharmaceuticals, Inc.


/s/   G. Calvin Sharpe
G. Calvin Sharpe, OBA No. 11702
Amy D. White, OBA No. 19255
PHILLIPS MURRAH P.C.
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma 73102
(405) 235-4100 (t)
(405) 235-4133 (f)
gcsharpe@phillipsmurrah.com
adwhite@phillipsmurrah.com

Conor B. O'Croinin*
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 949-1160

cocroinin@zuckerman.com

*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Defendant CVS Health Corporation; CVS Pharmacy, Inc.; Oklahoma CVS Pharmacy, L.L.C.*


/s/   *Steven E. Holden*
Holden Litigation, *Holden PC*
Steven E. Holden, OBA #4289
Don W. Danz, OBA #14607
15 East 5th Street, Suite 3900
Tulsa, OK 74103
918-295-8888; 918-295-8889 (facsimile)
SteveHolden@HoldenLitigation.com
DonDanz@HoldenLitigation.com


Lester C. Houtz*
Alex J. Harris*
BARTLIT BECK LLP
1801 Wewatta Street
Denver, CO 80202
Tel: (303) 592-3177
Fax: (303) 592-3140
les.houtz@bartlitbeck.com
alex.harris@bartlitbeck.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Walgreens Boots Alliance, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the following parties are being served with a copy of this document on November 26, 2019, in accordance with the Federal Rules via CM/ECF, via email, or via mail, postage pre-paid.

Matthew J. Sill
Harrison C. Lujan
Fulmer Sill Law Group
PO Box 2448
1101 N. Broadway Ave, Suite 102
Oklahoma City, OK 73103

Tony G. Puckett
Todd A Court
McAfee & Taft
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102

Joshua D. Burns
CROWE & DUNLEVY, P.C.
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102

Robert G. McCampbell
Nicholas V. Merkley
GABLEGOTWALS
One Leadership Square, 15th Floor
211 North Robinson
Oklahoma City, OK 73102-7255

Harvey Bartle, IV
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, New Jersey 08540-6241

Steven A. Reed
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339

Ryan A. Ray
NORMAN WOHLGEMUTH CHANDLER
JETER BARNETT & RAY, P.C.
2900 Mid-Continent Tower
401 South Boston Avenue
Tulsa, Oklahoma 74103

D. Michael McBride III
Susan E. Huntsman
CROWE & DUNLEVY
A Professional Corporation
500 Kennedy Building
321 S. Boston Ave.

Jeffrey A. Curran
Ashley E. Quinn
GABLEGOTWALS
One Leadership Square, 15th Floor
211 North Robinson
Oklahoma City, OK  73102

James W. Matthews
Ana Francisco
Katy E. Koski
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199

Clifford F. Kinney, Jr.
SPILMAN, THOMAS & BATTLE, PLLC
300 Kanawha Blvd, E
Charleston, WV 25301

Frank H. Spruiell, Jr.
Russell R. Dickson
WIENER, WEISS & MADISON, APC
Ste. 1000
330 Marshall Street
Shreveport, LA 71101

D. Todd Riddles
CHEEK LAW FIRM, PLLC

John H. Sparks
Michael W. Ridgeway
ODOM, SPARKS & JONES PLLC
HiPoint Office Building
2500 McGee Drive Ste. 140
Norman, OK 73072

Charles C. Lifland
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071

Ray E. Zschiesche
PHILLIPS MURRAH
101 N. Robinson Ave.
Oklahoma City, OK 73102

John Lombardo
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017

Joe M. Hampton
Amy J. Pierce
HAMPTON BARGHOLS PIERCE, PLLC
Oklahoma Tower, Suite 2700
210 W. Park Avenue
Oklahoma City, Oklahoma 73102

Jon Epstein
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK  73102-8865

Richard Gallagher
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006

311 N. Harvey Ave.
Oklahoma City, OK  73102

John J. Haggerty
FOX ROTHSCHILD LLP
2700 Kelly Road, Suite 300
Warrington, PA 18976

G. Calvin Sharpe
Amy D. White
PHILLIPS MURRAH P.C.
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma 73102

Conor B. O'Croinin
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031

Steven E. Holden
Don W. Danz
15 East 5th Street, Suite 3900
Tulsa, OK 74103

Lester C. Houtz
Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street
Denver, CO 80202

Robert A. Bragalone
GORDON & REES
101 Park Avenue, Suite 1300
Oklahoma City, OK 73102

Jennifer Pantina
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600

*/s/ Stuart D. Campbell*
  Stuart D. Campbell